**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**


CHRISTOPHER BRICKEY                                          PETITIONER
ADC #129049


VS.                          5:16-CV-00150 BSM/JTR


WENDY KELLEY, Director,
Arkansas Department of Correction                           RESPONDENT


## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Christopher Brickey ("Brickey"). *Doc. 2*. Before addressing

1

Brickey's habeas claims, the Court will review the procedural history of the case in state court.

On March 31, 2014, a jury in Grant County, Arkansas found Brickey guilty of one count each of residential burglary and theft of property. The jury sentenced Brickey, a habitual offender, to forty years' imprisonment. *Doc. No. 8-2 at 33-34, 59-60*.

Brickey timely appealed both of his convictions, which he challenged only on the grounds of sufficiency of the evidence. On March 11, 2015, the Arkansas Court of Appeals affirmed.[1] *Christopher Brickey v. State of Arkansas*, 2015 Ark. App. 175.

---

[1] The Arkansas Court of Appeals discussed the evidence supporting both of Brickey's convictions and found it to be sufficient:

> Robbin Minchew was the victim of the residential burglary and theft of property at issue. She is a second cousin to Brickey. On January 17, 2014, she left her home for work, leaving the house unlocked, as was her general habit. At about 9:45 a.m. that morning, Brickey texted Robbin to determine whether she was at work and to inquire about going to lunch. Although they were related, Robbin and Brickey rarely communicated via text message; Robbin therefore found the text unusual because this was the first time that Brickey had ever contacted her at work or offered to take her out to lunch. When Robbin returned home that day, she discovered that her house had been burglarized. A white Xbox and her wallet were missing.

> Robbin had communication with her stepdaughter, Destiny Minchew. Destiny informed Robbin that she had seen Brickey at Robbin's house earlier in the day, outside on the patio. Destiny asked him why he was there, and he said he was looking for Robbin. When Destiny said that Robbin was at work, Brickey said he was there to speak to Destiny's uncle, Tommy. Destiny told him that he needed to leave because he was not welcome there. Brickey "mouthed some words" and got in his car; Destiny followed him down the driveway until he turned right, headed toward Pine Bluff.

On May 4, 2015, Brickey filed a *pro se* Rule 37 petition for post-conviction relief in which he argued that: (1) his trial counsel was ineffective for permitting two jurors, Bennie Jackson and Cathy Wallace, to serve on the jury because they had already served as jurors in the same term;  (2)  his trial counsel was ineffective for failing to object to a juror serving after the juror revealed, shortly before the testimony of the victim's stepdaughter, that he went to church with her;  (3)  he was denied a fair and impartial trial because two jurors had served on juries within two years;  (4)  his rights were violated because the state failed to prove his guilt beyond a reasonable doubt;  and (5)  the prosecutor engaged in misconduct by failing to

---

After discovering that the items were missing from her house, Robbin texted Brickey. She advised him that she had a videotape of him burglarizing her house, when in reality she did not. She also told him that if he would bring her belongings back, she would not call the police. Brickey texted her back with a message that said, "if u say u have video with me on it then take it [to] the police ... i don't have shit nor [am] I worried cause I have an air tight alibi ... so u do what u have to do and so will I ... but remember Robbin ... I have been doing this a long time."

Some of the items taken from Robbin's home were eventually recovered. Evelyn Fachin, a mail carrier, found Robbin's wallet on the side of the road about 1:30 in the afternoon as she was running her route on January 17, 2014. Detective Robert Bird of the Grant County Sheriff's Office ran a search on Leads Online and found a transaction showing that Brickey had sold an Xbox matching the description of the stolen Xbox at a pawn shop in Pine Bluff. Sarah Milner, the manager of the pawn shop, confirmed that Brickey had come into her shop to sell an Xbox on January 17; she gave him $60 for it.  The pawn ticket listed Brickey's name as the pledgor/seller.

*Brickey v. State*, 2015 Ark. App. 175, *2-3 (2015).

notice that two jurors were ineligible to serve due to their prior service.  *Doc. No. 8-6*.

On June 3, 2015, the trial court denied Rule 37 relief.  *Doc. 8-8*.  Brickey did *not* appeal to the Arkansas Supreme Court.

On May 19, 2016, Brickey initiated this federal habeas action.[2]  *Doc. 2*.  While Brickey's habeas Petition is vague and fails to enumerate or discuss his specific claims, he appears to be asserting the two ineffective assistance of counsel claims raised in his Rule 37 petition and a new ineffective assistance of counsel claim that was *not* included in his Rule 37 petition:  His trial counsel was ineffective in advising him on a plea offer that Brickey rejected shortly before trial.[3]  *Doc. 2 at 7*.

In her Response, Respondent argues that all of Brickey's habeas claims are procedurally defaulted or fail on the merits.  *Doc. 8*.  Brickey has filed a Reply.  *Doc. 13*.  Thus, the issues are joined and ripe for resolution.

---

[2]  Much of Brickey's Petition is devoted to requesting this Court to appoint counsel and stay the proceedings to allow appointed counsel to "vigorously investigate and present, if available, these [unspecified habeas] claims."  *Doc. 2 at 6*.  The Court declined Brickey's request for appointment of counsel on July 7, 2016.  *Doc. 5*.

Brickey fails to provide any factual or legal basis for a stay of this habeas proceeding.  In *Rhines v. Weber*, 125 S.Ct. 1528, 1535 (2005), the Court held that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court"  and even then a district court abuses its discretion if it grants a stay when "unexhausted claims are plainly meritless."  None of the facts in this case justifies the Court issuing such a stay.

[3]  In construing Brickey's habeas petition, the Court is mindful of the Eighth Circuit's directive to "be careful to adjudicate only those claims upon which the habeas petitioner seeks relief and take care not to decide claims upon which the petitioner never intended to seek relief." *Frey v. Schuetzle,* 78 F.3d 359, 360–61 (8th Cir.1996).

For the reasons discussed below, the Court concludes that Brickey has procedurally defaulted all his federal habeas claims. Thus, it recommends that the Petition for a Writ of Habeas Corpus be denied, and that the case be dismissed, with prejudice.

## II. Discussion

### A.     Brickey Has Procedurally Defaulted His Federal Habeas Claims

Before seeking federal habeas review, § 2254(b)(1)(A) requires a state prisoner to first "exhaus[t] the remedies available in the courts of the State," thereby affording the state courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Id*. at 731-32.

Under Arkansas law, ineffective assistance of counsel claims generally must be raised in a Rule 37 petition and may not be considered on direct appeal. *Ratchford v. State*, 357 Ark. 27, 31 (2004) ("It is well settled that this court will not consider ineffective assistance as a point on direct appeal unless that issue has been considered by the trial court."). Thus, to exhaust his Rule 37 ineffective assistance of counsel claims, Brickey was required to raise those claims with the trial court and then appeal its denial of relief to the Arkansas Supreme Court. *Armstrong v. Iowa*, 418 F.3d 924, 925-26 (8th Cir. 2005). Brickey admits that he did not appeal the trial

court's decision, which resulted in a procedural default of those ineffective assistance of counsel claims. [4]

Brickey also procedurally defaulted his "new" ineffective assistance of counsel claim by raising it, *for the first time*, in this federal habeas action.

When a procedural default occurs, federal habeas review of the claim is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### B.    *Martinez* Does Not Excuse Brickey's Procedural Default

To excuse his procedural default, Brickey relies on *Martinez v. Ryan*, 566 U.S. 1 (2012). *Doc. 2 at 3.*   As explained below, however, *Martinez* has no application in this case.

### (1)    *Martinez* does not apply to the two ineffective assistance claims raised in Brickey's Rule 37 petition

In *Martinez v. Ryan* and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the Court recognized that, in a narrow range of habeas cases, a petitioner can rely on a lack of counsel or ineffective assistance of counsel, *at the initial step of post-conviction*

---

[4]  In his habeas papers, Brickey argues that he was not required to appeal the trial court's denial of Rule 37 relief. *Doc. 13 at 2.*  As a matter of law, this contention is flatly wrong.

*review*, to establish "cause" to excuse the procedural default of an ineffective assistance of counsel claim.

*Martinez* and its progeny apply *only* to defaults that occur in the *initial post-conviction proceeding* and provide "no support ... for the contention that the failure to preserve claims on appeal from a post-conviction proceeding can constitute cause." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (recognizing *Martinez* is not applicable to excuse default of ineffective assistance claims that were litigated in an initial review post conviction proceeding, but not preserved in the post-conviction appeal); *see Martinez*, 566 U.S. at 16 (its holding did not extend to defaults that occurred in other kinds of proceedings, "including appeals from initial-review collateral proceedings").

Thus, by *not appealing* the trial court's denial of Rule 37 relief to the Arkansas Supreme Court, Brickey procedurally defaulted both of those ineffective assistance of counsel claims.  Accordingly, Brickey cannot use *Martinez* to save those claims.

> **(2)    Because Brickey's "new" ineffective assistance claim is *not* "substantial," the equitable exception of *Martinez* does not apply**

In his § 2254 habeas Petition, Brickey vaguely asserts, for the first time, that his trial  counsel gave him "improper advice" which resulted in Brickey declining a plea offer of twenty years.[5]   *Doc. 2 at 7*.    As explained below, because this

---

[5]  Brickey did not assert this claim in his Rule 37 petition filed with the trial court.

ineffective assistance of counsel claim is *not* "substantial," Brickey cannot thread the *Martinez* needle and save the claim from procedural default.

*Martinez* only allows a federal court "to find 'cause,' thereby excusing a habeas petitioner's procedural default in Arkansas where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (*quoting Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013)); *see Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) (applying *Martinez* and *Trevino* to Arkansas proceedings.

To satisfy the first element of *Martinez*, Brickey must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez,* 566 U.S. at 14; *Dansby,* 766 F.3d at 834. For an ineffective assistance of counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; *and* (2) is supported by at least some facts. *Martinez,* 566 U.S. at 14-16. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective assistance of counsel claim is procedurally defaulted and cannot be considered by a federal court in a § 2254 habeas action. *Id.*

Brickey's ineffective assistance claim is "wholly without factual support" and, therefore, does not qualify for an equitable ruling to excuse the procedural default. *Martinez*, 566 U.S. at 16; *Dansby*, 766 F.3d at 834.

As a threshold matter, Brickey fails to specify the "improper advice" his trial counsel allegedly gave him about the plea offer. This makes it is impossible for this Court to evaluate the quality of his counsel's performance under *Strickland v. Washington*,[6] and thereby determine the substantiality of Brickey's claim. Nevertheless, *the record itself* makes it clear that *both* the trial court and Brickey's attorney fully advised him about the terms of the plea offer and the risk he faced if he rejected the offer and proceeded to trial.

Shortly before trial, Brickey's attorney informed the trial court that: (1) the State had offered Brickey a plea deal of 20 years' incarceration, the maximum penalty for a *non-habitual offender* charged with the Class B felony of residential burglary; and (2) Brickey had *declined* the offer. *Doc. 8-2 at 90-91.* Under close

---

[6] 466 U.S. 668, 687-688, 691-692 (1984).

To prevail on an ineffective assistance of counsel claim, a prisoner must establish that his attorney's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms," and the "professionally unreasonable" conduct of counsel "prejudiced the defense." *Strickland*, 466 U.S. at 687-88, 691-92. Prejudice" is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a prisoner fails "to establish either Strickland prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011); *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.")

questioning from the trial judge, Brickey then confirmed, on the record, that *he fully*

*understood the offer and the risk of declining to accept it*:

> THE COURT: Okay. Mr. Brickey, you are present here and today is the day
> set for a jury trial. And the State has made you an offer of 20 years to Arkansas
> Department of Corrections as part of the plea negotiation, and which you have
> a right to accept or reject, whatever you desire. And is it your desire, was that
> communicated to you by your attorney, Mr. Wilson?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And he explained to you the minimum and maximum
> sentences that could be entered in this case today?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: All right. And I understand that the State has amended
> to allege you're a habitual offender. And pursuant to that, are you aware
> of that?
>
> DEFENDANT: I know that they were going to, I think, try me as an habitual
> offender.
>
> THE COURT: Correct. And so the situation is that the offer made to you is
> less than what would be under the habitual offender status. You understand
> that?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Therefore, can we be assured that that's been
> communicated to you clearly by your attorney and you understand the
> ramifications of going before the jury today?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And is it your desire to reject the offer made by the
> State?
>
> DEFENDANT: Yes, sir.

10

THE COURT: Very good. Okay. Then we will get started in just a moment. Good luck to you.

DEFENDANT: Yes, sir. Thank you very much.

THE COURT: Yes, sir.

*Id.*

This pretrial colloquy makes it clear that: (1) Brickey was fully advised of the twenty-year plea offer and, as someone who *knew* he was being prosecuted as a "habitual offender," he was aware of the risk of rejecting the plea offer and later receiving a longer sentence if he was convicted as a "habitual offender"; and (2) he was fully advised the "[plea] offer made to you is less than what would be [the sentence] under the habitual offender [statute]." After the trial judge confirmed with Brickey that he was aware of these facts, all of which had been communicated to him "by [his] attorney," Brickey knowingly and voluntarily made the decision, on the record, to reject the plea offer and proceed to trial.

Given these undisputed facts, there is *nothing* in the record to support Brickey's claim that his trial counsel's performance was constitutionally deficient with respect to the plea offer. In fact, the trial record directly refutes Brickey's vague assertion of constitutionally ineffective assistance of counsel regarding the plea offer. Accordingly, because this new ineffective assistance of counsel claim is not

"substantial," no equitable basis exists under *Martinez* to excuse Brickey's procedural default of that claim.

### C.    Brickey's Gateway Claim of "Actual Innocence"

In his Reply Brief, Brickey argues that the Court should consider his otherwise procedurally defaulted ineffective assistance claims because he is "actually innocent." *Doc. 14 at 8-9.  Schlup v. Delo*, 513 U.S. 298 (1995).  A gateway claim of actual innocence requires Brickey to offer proof that:  "(1)  the allegations of constitutional error [are] supported with new reliable evidence not available at trial; and (2)  it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015) (omitting internal quotations and citations);  *see also Schlup v. Delo*, 513 U.S. 327-328.

Brickey offers *no* "new reliable evidence not available at trial" to support his claim of actual innocence.  Instead, he argues "there was no evidence" tying him to the crime other than the testimony of the alleged victim, who was motivated to lie because he was selling her narcotics.[7] *Doc. 13 at 9.*  Brickey also argues, solely in connection with his claim of actual innocence, that his trial counsel was ineffective

---

[7]    At trial, Brickey acknowledged to the Court that he was a heroin addict. *See* Trial Transcript, *Doc. 8-2 at 66*.  However, there was *no evidence* suggesting that the victim, Robbin Minchew, was involved in drugs.  These facts suggest that Brickey has created from whole cloth a story designed to save his otherwise procedurally defaulted habeas claims.

for failing to present evidence to show that, because Brickey's family owned the land on which the victim's trailer was located, he had the "right to enter the location." *Id*. This unsubstantiated and self-serving allegation hardly qualifies as "evidence," but, even if it did, it certainly is not *new evidence* that was *unavailable* to Brickey at the time of his trial.

The law is clear that, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."[8] *Schlup*, 513 U.S. at 316; *see Nooner v. Hobbs*, 689 F.3d 921, 937 (8th Cir. 2012) (when habeas petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further *Schlup* analysis"), *cert. denied*, 134 S. Ct. 58 (2013).

Finally, Brickey's so-called "new evidence" might, at most, have been used by his attorney to impeach witnesses at trial. Such impeachment evidence is *not* "new evidence" that he did not commit the crimes. *See Dansby v. Norris*, 682 F.3d 711, 717 (8th Cir. 2012) ("Latter-day impeachment evidence, however, will seldom, if ever, make a clear and convincing case that no reasonable jury could believe the core of the witness's account.") (internal quotations omitted), *vacated on other*

---

[8] Here, there is no "new evidence of innocence," *and* there is nothing to suggest Brickey has "a concededly meritorious constitutional violation."

*grounds*, 133 S. Ct. 2767 (2012); *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) ("Actual innocence means factual innocence, not mere legal insufficiency.") (internal quotations and alterations omitted).

Brickey has failed to come forward with any new evidence to satisfy his burden under *Schlup*. Thus, because Brickey has failed to offer any proof to satisfy either of the essential elements necessary to maintain a gateway claim of "actual innocence," the Court's holding in *Schlup* provides no basis for excusing Brickey's procedural default of his habeas claims.

### III. Conclusion

All of Brickey's federal habeas claims are procedurally defaulted, and he has failed to demonstrate that his default should be excused.

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus be DENIED and this habeas case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 24th day of February, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

14